1    ROBERT R. POWELL   SBN: 159747
     SARAH E. MARINHO   SBN: 293690
2    POWELL & ASSOCIATES
     925 West Hedding Street
3    San Jose, California 95126
     T: (408) 553-0201 F: (408) 553-0203
4    admin@rrpassociates.com

5
     Attorneys for Plaintiffs
6
     NANCY K. DELANEY, SBN:70617
7    WILLIAM F. MITCHELL, SBN: 159831
     MITCHELL, BRISSO, DELANEY & VRIEZE
8    814 Seventh Street
     Eureka, CA 95502
9    T: (707) 443-5643  F: (707) 444-9586
     Email: ndelaney@mitchelllawfirm.com
10
     Attorney for Defendants
11

12                   UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14

15   LINDA MORALES, et al,                 )   Case No.: 16-CV-02429-EMC
                                           )
16                      Plaintiffs,        )   JOINT PRE-TRIAL CONFERENCE
                                           )   STATEMENT
17        vs.                              )
                                           )
18   COUNTY OF MENDOCINO, et al,,          )   Pre-Trial Conference:
                                           )   DATE:  March 6, 2018
19                      Defendants.        )   TIME:   2:30 p.m.
                                           )   CTRM:  5, 17th Floor, San Francisco
20                                         )   Honorable Edward M. Chen
                                           )
21                                         )   Trial:
                                           )   DATE:  April 2, 2018
22                                         )   TIME:   8:30 a.m.
                                           )
23   _____)

24

25

26

MITCHELL, BRISSO,
DELANEY & VRIEZE, LLP
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

                                    0

The parties hereby submit their Joint Pretrial Statement pursuant to the Court's Pretrial Order [Doc. # 55].

1.     **THE ACTION**

    A.    Substance of the Action

A report of physical and emotional abuse was made by VW, the cousin of KB, and KB by telephone on July 22, 2015, whereby it was reported that, inter alia, KB was hit by the guardian and food was withheld.  The investigation was assigned to Jannee Dale who obtained a "See and Speak" warrant allowing her to enter and interview KB at the Morales residence which she did on July 30th, 2015, accompanied by a Sheriff with the Mendocino County Sheriff's Office.  Following the interview on July 30, 2015, K.B. stayed with the family of the Sheriff's Deputy until August 3rd, 2015, when the Deputy advised he was no longer able to care for K.B., and K.B. was taken to a shelter.  The reasons for an investigation to have ever occurred, or for K.B. to have ended up at the Deputy's home on July 30th, 2015, or stayed at the home until August 3rd, 2015, are disputed.   Defendants submit that the period of time that KB was at the Denton residence is immaterial and irrelevant.  Plaintiffs also claim that Jannee Dale refused the request of Linda Morales to speak with KB on July 30, 2015, which defendants submit is also irrelevant and immaterial because defendants assert KB did not want to speak with Linda Morales at that time.

On August 4, 2015, Linda Morales as the guardian of KB, signed a Voluntary Placement Agreement whereby KB remained in the care of Mendocino County until September 28, 2015.  Defendants assert that this was voluntary and that until

MITCHELL, BRISSO,
DELANEY & VRIEZE, LLP
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

1
JOINT PRE-TRIAL CONFERENCE STATEMENT

September 25, 2015, Linda Morales did not request to terminate the Agreement.  Linda Morales claims that she was coerced into signing the Agreement by threats that she and her husband would never see KB again which defendants deny.  Linda Morales also claims she repeatedly demanded KB be returned to her before September 25, 2015, which defendants deny.  VW resided with her aunt, defendant Buffy Wright, the daughter of Linda Morales and mother of KB.  Plaintiffs allege that defendant Wright manipulated VW and KB to make the report to CPS so that defendant Wright could regain custody of KB, which defendant Wright (and VW) deny.

      B.    <u>Relief Prayed</u>

Plaintiffs seek compensatory and punitive damages.

**2.**    **<u>FACTUAL BASIS OF THE ACTION</u>**

      A.    <u>Undisputed Facts</u>

      1.    At all relevant times, Linda Morales was the duly appointed and acting guardian of KB, born in 2002, and he had been in her care since 2009.

      2.    Defendant Buffey Wright is the biological mother of KB, the daughter of Linda Morales and had court ordered visitation with KB.

      3.    At all relevant times, defendants Jannee Dale, Lisa Allison and Mimi Cabral were employed by CPS for the County of Mendocino and acting under color law in the course and scope of their employment.

      4.    A report of physical and emotional abuse was made by telephone by VW, the cousin of KB, and KB to Mendocino County CPS on July 22, 2015.

MITCHELL, BRISSO,
DELANEY & VRIEZE, LLP
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

5.      Defendant Dale obtained a "See and Speak" warrant and interviewed KB on July 30, 2015 at the Morales home.

6.      KB remained out of the Morales home between August 4, 2015, and September 28, 2015.

B.      Disputed Factual Issues

1.      Whether the execution of the Voluntary Placement Agreement by Linda Morales was voluntary or coerced.

2.      Whether Linda Morales communicated an intent to terminate the Agreement prior to September 25, 2015.

3.      Whether defendant Wright manipulated KB and VW to make the report to CPS.

4.      Whether the acts of defendant Wright were outrageous and not of a nature tolerated by a civilized society.

5.      Whether the acts of defendant Wright were intended to or with reckless disregard did cause severe emotional distress to Linda Morales and KB.

**3.    DISPUTED LEGAL ISSUES**

As discussed in more detail in their trial brief, defendants maintain that plaintiffs have the burden of proof with respect to whether the Agreement was voluntary and that plaintiff Rudolfo Morales has no cognizable remaining claim based upon the dismissal of the *Franks* claim.

**4.    ESTIMATE OF TRIAL TIME**

Five days.

MITCHELL, BRISSO,
DELANEY & VRIEZE, LLP
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

5.   **TRIAL ALTERNATIVES AND OPTIONS**

    A.    Settlement Discussion

The parties are scheduled to participate in a further settlement conference on February 26, 2018, but are not optimistic about resolution in light of previous settlement discussions.

    B.    Consent to Trial Before a Magistrate Judge

A declination has been filed by plaintiffs.

    C.    Amendments or Dismissals

Plaintiffs have agreed to dismiss Robin Buxton, Jennifer Sookne and Susan Rogers as to all claims with prejudice.  Plaintiffs' have agreed to voluntarily dismiss Claims Seven, Nine, Ten and Eleven of the Complaint.  The Eighth Claim remains as to Ms. Wright but without co-conspirators.

In light of summary judgment order (*Franks* claim), defendants respectfully submit that Rudolfo Morales is no longer a viable plaintiff.

    D.    Bifurcation or Separate Trial of Issues

Not applicable.

6.   **WITNESSES**

    A.    Plaintiffs' witness list is attached hereto as ***Exhibit A***.

    B.    Defendants' witness list is attached hereto as ***Exhibit B***.

7.   **EXHIBITS**

A joint list of exhibits is attached hereto as ***Exhibit C***.

MITCHELL, BRISSO,
DELANEY & VRIEZE, LLP
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

1   **8.    USE OF DISCOVERY RESPONSES**

2       There is no anticipated use of discovery responses at this time.

3

4

5   DATED:  February 14, 2018        POWELL & ASSOCIATES

6

7                                    By:   /s/ Robert R. Powell_____
                                          Robert R. Powell
8                                         Attorneys for Plaintiffs

9   DATED:  February 14, 2018        MITCHELL, BRISSO, DELANEY & VRIEZE

10

11                                   By: /s/ Nancy K. Delaney_____
                                          Nancy K. Delaney
12                                        William Mitchell
                                          Attorneys for County Defendants
13

14

15

16

17

18

19

20

21

22

23

24

25

26

MITCHELL, BRISSO,
DELANEY & VRIEZE, LLP
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

5
JOINT PRE-TRIAL CONFERENCE STATEMENT

*EXHIBIT A*

1   ROBERT R. POWELL, SBN 159747
    SARAH E. MARINHO, SBN 293690
2   POWELL & ASSOCIATES
    925 West Hedding Street
3   San Jose, California 95126
    T: 408-553-0201
4   F: 408-553-0203
    E: rpowell@rrpassociates.com
5
6   Attorneys for Plaintiffs

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9
                        (San Francisco Division)
10
11   LINDA MORALES, et al.,                    Case No. 16-CV-02429-EMC

12              Plaintiffs,

13        vs.                                   **PLAINTIFFS' TRIAL WITNESS LIST**

14   COUNTY OF MENDOCINO, et al.,

15              Defendants.

16

| Witness | Substance of Testimony | Time Estimate |
|---------|------------------------|---------------|
| Linda Morales | Plaintiff; all aspects of her involvement in removal related precursor events and events at or near time of removal, content and circumstances of discussions with the individual defendants and others involved in the removal and detention of K.B. Percipient knowledge and testimony regarding damages resulting from the unlawful removal of K.B. | Direct: 2.00 Hours Cross: 1.50 Hours |
| Rodolfo Morales | Plaintiff; all aspects of his involvement in removal related precursor events and events at or near time of removal, content and circumstances of discussions with the individual defendants and others involved in the removal and detention of K.B. Percipient knowledge and testimony regarding damages resulting from the unlawful removal of K.B. | Direct: 1.00 Hours Cross: 0.75 Hours |

1

| K.B. | Plaintiff; all aspects of his involvement in removal related precursor events and events at or near time of removal, content and circumstances of discussions with the individual defendants and others involved in his removal and detention. Percipient knowledge and testimony regarding damages resulting from the unlawful removal. | Direct: 1.25 Hours Cross: 1.00 Hours |
|---|---|---|
| V.W. | Minor defendant, dismissed; V.W. has knowledge of the conspiracy to place a false referral phone call to CPS regarding K.B. | Direct: 1.00 Hours Cross: 0.75 Hours |
| Jannee Dale | Defendant; to appear by deposition as she lives in Missouri. All aspects of her involvement in removal related precursor events and events at or near time of removal. | Direct: 1.50 Hours Cross: 1.00 Hours |
| Lisa Allison | Defendant; to appear by deposition as she lives in Ohio. All aspects of her involvement in removal related precursor events and events at or near time of removal. | Direct: 1.00 Hours Cross: 0.75 Hours |
| Buffey Wright | Defendant; mother of K.B. | Direct: 1.25 Hours Cross: 0.75 Hours |
| Jennifer Sookne | Defendant; all aspects of her involvement in removal related precursor events and events at or near time of removal. | Direct: 1.00 Hours Cross: 0.50 Hours |
| Mimi Cabral | Defendant; all aspects of her involvement in removal related precursor events and events at or near time of removal. | Direct: 1.00 Hours Cross: 0.50 Hours |
| Christian Denton | CPS placed K.B. with Deputy Denton and his wife Summer Denton temporarily upon removing K.B. from Linda MORALES. Specific testimony unknown, but anticipated testimony regarding his knowledge about the events leading up to him being present in the home prior to the removal of K.B., as well as the circumstances surrounding K.B. leaving his care. | Direct: 0.75 Hours Cross: 0.50 Hours |
| Summer Denton | CPS placed K.B. with Summer Denton and her husband Deputy Denton temporarily upon removing K.B. from Linda MORALES. | Direct: 0.50 Hours Cross: 0.50 Hours |

2

| Eric Wright | Knowledge of prior behavior and demeanor of his nephew, K.B., including from a prior extended visit they had at Mr. Wright's home. Knowledge of his sister, Defendant Buffey Wright, and her history of lying, neglect of K.B. and substance abuse. Specific testimony unknown, but anticipated testimony to include discovery and preservation of social media messages posted by Defendants. All aspects of his involvement in removal related precursor events and events at or near time of removal, content and circumstances of discussions with the individual defendants and others involved in the removal and detention of K.B. Percipient knowledge and testimony regarding damages resulting from the unlawful removal of K.B. | Direct: 1.00 Hours Cross: 0.75 Hours |
|---|---|---|
| Jennifer Wilson-Tancreto | K.B.'s attorney in Probate Court wherein Linda Morales became K.B.'s legal guardian and K.B.'s mother, Defendant Buffey Wright only had four hours weekly visitation. Knowledge of Buffey Wright's multiple attempts to terminate the guardianship before finally conspiring to make a false report in order to gain custody of K.B. Anticipated testimony regarding her investigation and representation of K.B. by following up with his teachers and counselors and community members regarding his school and home life. | Direct: 0.75 Hours Cross: 0.50 Hours |
| Christine Hester | Business manager and religious education teacher for the parish who has known K.B. since he was seven. Anticipated testimony regarding K.B. before and after his wrongful removal, as well as his family life with Linda and Rodolfo. | Direct: 0.50 Hours Cross: 0.25 Hours |
| Mary Koller | Head of the altar servers at the parish who has known K.B. since age seven. She chose K.B. as head altar server around July 2016. Anticipated testimony regarding K.B. before and after his wrongful removal, as well as his family life with Linda and Rodolfo. | Direct: 0.50 Hours Cross: 0.25 Hours |
| Mindy Juszczak | Principal of K.B.'s school who has known him from seventh grade to present. K.B. is now a freshman. Knowledge of K.B. as a student, young man, and specifically about County social workers coming to campus for K.B. on numerous occasions. | Direct: 0.50 Hours Cross: 0.25 Hours |
| Heather Barsh | Teacher's aide questioned by Jennifer Wilson-Tancreto. Knowledge of K.B. as a student, young man, and specifically about County social workers coming to campus for K.B. on numerous occasions. | Direct: 0.50 Hours Cross: 0.25 Hours |

3

| Rebecca Nelson, MSW | Expert; Rebecca Nelson reviewed case files along with publications, procedures, practices, and customs in preparation of report regarding removal of K.B. Anticipated testimony will cover the conclusions of her report. | Direct: 1.25 Hours Cross: 0.75 Hours |
|---|---|---|

Date: February 13, 2018

_/s/Robert R. Powell_

ROBERT R. POWELL
Attorney for Plaintiffs

4

**Rebecca Nelson, MSW**
2120 Diamond Blvd #120
Concord, CA 94520
(916) 899-8162
becky@cbisocialwork

## CURRICULUM VITAE

## PROFESSIONAL EXPERIENCE

### CHILD'S BEST INTEREST
*Contra Costa County Ombudsman*                                09/2014- present
Development of County Child Welfare Ombudsman program in Contra Costa County, Manage budget and administration, develop public relations and community partnership, assist in obtaining resolution of conflict or complaints regarding Child Welfare.  Investigate complaints; formal or informal.
*CONSULTATION*
Strategies 2.0 Learning Community Facilitator. Develop and facilitate Bay Area Convening's for all agencies within the Bay Area with the focus on strengthening families. under Shasta County Juvenile Court approval, reviewed and assessed child welfare case, provide recommendations for placement of child.
Attend Team Decision Making (TDM) meetings in Alameda County assess Child Welfare allegations, investigation, and placement procedure.
Assist families during Child Welfare home visits and meetings in Alameda County, Solano County and Shasta County.
Review and assess Guardianship Case in Probate Court with written recommendations of findings and appropriate placement.
Supervise parental visits.
Provide case plan and case management services in Probate Court for reunification purposes.

### YOLO COUNTY DEPARTMENT OF SOCIAL SERVICES            01/2011 – 10/2013
*Division Manager, Social Services*
Managed all administration, budget, human resource and program development for three social service divisions; Child Welfare Services, Adult Protective Services and In Home Support Services to include oversight of 15 programs Performed program quality assurance and ensured compliance with all local, state, and federal social services guidelines. Development of removal warrants, entrance into dwelling warrant and runaway warrants protocol for Child Welfare; Develop warrant procedures between Child Welfare and Law Enforcement agencies.

### EL DORADO COUNTY DEPARTMENT OF HUMAN SERVICES        09/2008 – 01/2011
*Social Worker Supervisor*
Directed daily social work operations of Family Services in rural county. Trained, supervised, and evaluated team of nine Social Workers. Assessed response of emergency response referrals of abuse/neglect against children and provided guidance to staff on how to handle crisis intervention to clients. Reviewed case work to ensure laws and policy were followed.  Reviewed Petitions and Court reports prior to submission to the Court to include but not limited to Detention, Jurisdiction, Disposition, Review Hearings and 366.26 Reports.

### CONTRA COSTA COUNTY DEPARTMENT OF HUMAN SERVICES     05/2000 – 09/2008
*Social Casework Specialist II*
Provided an array of social services for children and families in Child Welare, Conducted Psychosocial assessments, intakes, treatment planning, case management, and crisis intervention. Responsible for writing Petitions, Court Reports and Case Plans. Developed and implemented treatment plans for individuals to overcome multiple psychosocial difficulties. Enlisted family support in adhering to regimens and treatment plans.

Rebecca A. Nelson

## EDUCATION

**SACRAMENTO STATE UNIVERSITY**, Sacramento, CA
*Master of Social Work, with an emphasis on Children and Family*
GPA: 3.9/4.0, 05/2000

**UNIVERSITY OF NEVADA**, Reno, NV
*Bachelor of Social Work*, *Generalist Practice*, **Minor: Substance Abuse/Addiction**,
GPA:4.0, 05/1997

## COUNCILS/AFFILIATIONS/TEACHING

**Board Member**: Yolo County Children's Alliance
**Board Member**: Yolo County Ageing Alliance
**Board Member**: Special Olympics Nevada Chapter
**Trainer**: Court Appointed Special Advocate Program

## Professional Membership

United States Ombudsman Association (USOA)
National Association of Social Workers   (NASW)
Contra Costa County Bar Association (Affiliate)

## Qualified Expert Witness as a Social Worker in Child Welfare

Juvenile Court: El Dorado Superior Court 12/2010
Family Court: Ukiah Superior Court 09/13/2017

## Testimony at Deposition

Galicia vs San Diego County 03/17
Vos vs Los Angeles County  12/2015
Dees vs San Diego County 10/2015

**Rebecca Nelson, MSW**
2120 Diamond Blvd., #120
Concord, CA 94520
Phone: (925) 849-4032
Email: becky@cbisocialwork.com

**Expert Witness Report of Rebecca Nelson, MSW – Pursuant to FRCP 26(a)(2)(B)**

To Whom It May Concern:

I Rebecca Nelson, MSW, hereby present the following as my expert witness report in the matter of Morales vs. Mendocino County.

## Summary Statement of Opinions and Basis

The complaint in this case raises issues regarding the removal of a child ("K.B."), the nature and quality of the investigation conducted by Jannee Dale (in consultation with and with approval her supervisor Lisa Allison), the warrantless removal of the child, his lengthy detention in the care of the County of Mendocino (59 days) under what the County claims was a "voluntary" placement by the Guardian Linda Morales, and also includes issues of confidentiality, notice of and consent for medical treatment of a K.B. while in County of Mendocino's care. There are issues related to a warrantless entry into the home as well, however, this area of law is not the subject of this report or this expert's expertise. On this final issue, the undersigned will only opine that social workers are generally informed in their training at some point in time of the rights of parents and their children to privacy in their homes from any agent of the government, as protected by the 4th Amendment to the U.S. Constitution.

A primary question presented to this expert in this referral was whether the information presented at the time of the initial emergency response investigation constituted an imminent risk of serious bodily injury such that there was insufficient time within which to obtain a warrant and avoid any specific harm for which there was concern. Another question was whether the Emergency Response Social Worker Jannee Dale conducted a

1

reasonably complete and competent investigation prior to taking the child into custody. I am of the opinion that the investigation of the claims of abuse and/or neglect as to K.B. by Jannee Dale was grossly incompetent, and that there was not an imminent risk of serious bodily injury under the circumstances presented and information obtained by Jannee Dale on July 30th, 2015, such as to justify the warrantless removal of K.B. from his primary caretaker (Guardian Linda Morales).

Another area of this report addresses whether the department and social workers such as Cabral who were involved in the matter after removal, had enough mitigating information, or continued their investigation so as to properly determine the risk to the child, and, whether when asked by the Guardian to release the child her requests were improperly ignored or refused; even if one assumes she "voluntarily" agreed to the placement initially. I am of the opinion that if Mrs. Morale's version of events with regard to demanding the child's return were as stated in her deposition, as supported by the conversations she had with the attorney for the child in the probate matter (Ms. Jennifer Wilson-Tancreto), the County of Mendocino and the individual defendant employees thereof violated the terms of the voluntary placement agreement and fell below the "best practices" of social work, as well as violating California law requiring the filing of a Petition if they believed the child was described by W&IC 300 and subject to a substantial risk of harm based on one of the four factors in W&IC 300(b), or some other provision of W&IC 300. Once a parent revokes permission for the continued "voluntary" placement, the child needs to be returned promptly, or there has been a "seizure" of the child.

Finally, the failure to give notice to the Guardian and primary caretaker of the child when medical appointments are scheduled for the child or medication given, is well below the "best practices" standards for social workers and exposes children being provided with medical care an increased risk of serious injury or harm – even death - without a parent or primary caretaker present. Parents and/or primary caretakers are the natural central repository for information about the health and well-being of children in their care, and the child's medical history, including but not limited to drug and other allergies that could be deadly.

All references to "testimony" below are to deposition testimony in this case. The undersigned understands there was never a juvenile dependency case filed as a result of the removal of K.B.

2

1. **Emergency Response investigation Requirements**

The State of California Health and Human Services Agency, Manual of Policy and Procedures referred to as Division 31 is the Child Welfare policy and procedures manual which this expert will reference throughout this report. The User's Manual for the Child Welfare Services Program, references the actual regulations contained in Division 31 as being, "a) Regulations adopted by the California Department of Social Services (CDSS) for the governance of its agents, licensees, and/or beneficiaries [in addition to other related Regulations all related to the Child Welfare Services Program in the State of California]

   A. **Conduct of Emergency Response Social Worker July 30th, 2015**

The social worker, Ms. Dale received a referral on July 22, 2015 alleging the child (a 12 year old male in Guardianship with Linda Morales; "K.B.") was at the hands of Mrs. Morales, hit with a hanger, hit in the face and chest, hit with a belt, and also deprived of food and called names (relating to weight).

On July 30, 2015, eight days later (indicating a lack of perceived exigency in the nature of the call to the screener), Ms. Dale requested Deputy Denton escort her to the home of Mr. and Mrs. Morales as testified by Deputy Denton with a warrant to speak with K.B. and to ensure the safety of K.B.'s removal if it were to come to that event.

Upon the arrival at the Morales home, Officer Denton advised Ms. Morales there was a warrant for the social worker Ms. Dale to speak with the child. There was no provision in the warrant requiring the Guardian to allow the child to speak with Ms. Dale alone or outside of the home.

Ms. Dale spoke with the child privately outside on the porch of a neighbor's home. During Ms. Dale's investigation it is K.B.'s testimony that he told the social worker he wasn't deprived of food and that he was not uncomfortable returning to his

3

grandmother, Ms. Morales. K.B. testified Ms. Dale asked him questions requiring yes or no responses and testified he lied about being hit by Ms. Morales, however, Ms. Dale never inquired of him if he was telling the truth, or questioned anything he said.

Division 31-105 Emergency Response Protocol requires a description of the alleged incident, including consideration to include but not limited to:

- Severity and Frequency of abuse
- Location and description of injury on child's body
- History of abuse, neglect or exploitation
- Caretakers characteristics
- Family Factors
- Review previous records
- Collateral Contacts to be

Ms. Dale testified she did not ask or look into these factors. She testified she did not see any marks on the child whom at the time was wearing shorts and a tee shirt. Ms. Dale testified she did not ask the child about the frequency or severity of the abuse. Ms. Dale testified she did not review previous records regarding this family. Ms. Dale testified she was the social worker on the 2014 referral in which the child reported being spanked so hard he couldn't sit down. At that time Ms. Dale reported the child disclosed to her he lied about the extensiveness of the spanking. She testified he sat down during that entire interview, a clear sign he was not being credible.

Both Ms. Dale and Deputy Denton testified they saw no evidence of physical abuse to K.B. Ms. Dale testified K.B. was wearing shorts and a tee shirt when she interviewed him and saw no marks or bruises. Ms. Dale testified K.B. did not look malnourished. Ms. Dale testified the child did report being hit by Ms. Morales and he was fearful of returning to his grandmother; the child refutes the latter claim, and testified he

4

was never asked, nor did he say that he was fearful of returning (actually in context at the time, the issue was as to "staying" with his grandmother) with grandmother in her home.

K.B. testified, and at no point did Janee Dale dispute in her testimony that at no point did Ms. Dale inquire as to whether anything the child was saying was true. She never asked when any specific claim of being struck, or anything else, had occurred. Nothing, in the reports constituted serious bodily injury. There is no state or federal law of which this expert is aware that prohibits using an object for corporal punishment, even if the punishment actually occurred.

Pursuant to Division 31-125 Investigation Requirements the social worker must conduct an in person investigation with all parents or in this case guardians who have access to the child who is alleged to be at risk of abuse, neglect or exploitation. The social worker Ms. Dale testified she did not speak with the guardian Linda Morales or her husband who lived in the home (Rudolfo Morales) even though both were present, nor did she speak to any other collateral contact who might have information regarding the physical abuse allegations, any history of neglect or exploitation, or the circumstances within the Guardian's family and home. The removal of the child was made without discussing or questioning the Guardian about a single claim made against the Guardian with the Guardian. Ms. Dale was reckless in performing her duties as a social worker under state and federal law.

Gathering all the necessary information as described in Division 31 regulations is part of the assessment process in determining child abuse. It is my opinion, based on the regulations and 17 years as a social worker for child protection agencies in Contra Costa, El Dorado, and Yolo counties, that the social worker did not conduct a thorough or even remotely reasonable investigation. There was no evidence this child had been the victim of abuse of the kind that would cause serious bodily harm, much less serious bodily injury, or some nature of severe neglect based on the information Ms. Dale had at the time of the removal. In addition, this child had some history of not being

5

honest as Ms. Dale was personally aware, and which she testified to with regard to the 2014 referral she investigated. It is also my opinion had the social worker conducted a complete assessment and investigation as required the child should not have been removed at all, but possibly some services in the nature of family counseling could have been recommended. No lesser restrictive plan or course of action short of removal was discussed or even apparently considered. This is far below the standards of social work and/or emergency response practices and not in accord with either state regulations or federal decisional law.

## B. Confidentiality-ICWA

Ms. Dale testified she contacted Steven Hood the representative of Sherwood Valley Band of Pomo Indians (SVBP) to accompany her to investigate the child welfare referral regarding K.B.

Ms. Morales acknowledged Mr. Hood was at the home, asking why he was present. The social worker advised that his presence was because K.B. has Native American Heritage. Ms. Morales testified she told Ms. Dale K.B. is not a tribal member. Ms. Morales testified that Mr. Hood was present at a Probate Hearing one year prior in which the judge ruled K.B. did not fall under tribal jurisdiction.

Ms. Conner, identified as person most knowledgeable, testified the policy of Mendocino County Indian Child Welfare Act Protocol "meets early inquiry into possible tribal affiliation, contacting and communicating with the tribal representative, making and documenting referrals to Indian providers to try and prevent the breakup of the Indian families; there's no prohibition to worker's communicating with tribal representatives and coordination of services in where there's reason to believe an Indian child is involved. In fact such communication is required in cases involving Indian children". She testified, "I don't know in my mind how a worker would coordinate an investigation without talking about what it is that they're going to be jointly investigating." It would appear that

6

this is a policy requiring the disclosure of confidential child welfare investigations to persons with no right to such information.

Further, it is my opinion had Ms. Dale conducted a records review she may have seen the child was not an Indian Child under the Indian Child Welfare Act (ICWA). Ms. Dale should have been aware of this in her previous investigation in 2014. It is my opinion the social worker did violate confidentiality under Welfare and Institutions Code 827 and Penal Code 11167.5 in bringing a representative from a tribe and informing him of the allegations, with the intent of investigating K.B. for abuse or neglect, all of which was done without confirming K.B. in fact fell under ICWA.

It is further my opinion as it relates to the County Protocol that the child must be identified and confirmed as an Indian Child before a social worker can discuss any information regarding the child welfare referral/case or they have breached confidentiality under Welfare and Institutions Code 827 and Penal Code 11167.5.

## 2. Removed vs. Voluntary Placement:

On July 30, 2017 Deputy Denton was present at the Morales home with the social worker Ms. Dale. Deputy Denton testified he was there to ensure the child's removal in the sense that if a removal occurred, it would be safe and/or peaceful; this position of an accompanying police officer is often referred to as "keeping the peace." The social worker testified she told Ms. Morales she could place K.B. with a family member or he will go into foster care for a "cooling off" period; either way the child was being removed. Ms. Dale further testified that the child was to be placed outside of his home, she was not leaving K.B. there. An audio-tape of the exchange between Ms. Dale, Deputy Denton, and Ms. Morales after Ms. Dale interviewed K.B. and announced he was being removed, makes Ms. Dale's decision she was removing K.B. quite clear.

The audio-recording was made by Deputy Denton, who testified he began recording the situation in the home when the discussion was getting heated, a "couple minutes" after Ms. Dale returned from speaking to K.B. In the recording, Ms. Morales is clearly upset with Ms. Dale who advised K.B. needed to leave the home for a "cooling off" period. Eventually it was Deputy Denton who took the child to his home as he knows K.B. Officer Denton testified K.B. is friends with his son. Officer Denton testified he understood K.B. would be with his family over the weekend, a couple of days.

The social worker Ms. Dale testified the child was not "removed", saying Ms. Morales voluntarily placed the child for a "cooling off" period. The social worker testified she was not leaving the child in the home and Ms. Morales needed to choose if the child goes into foster care or to a relative. Further, the audio of July 30, 2015 identifies Ms. Dale telling Ms. Morales the warrant she had with her allowed for the removal of the child from her care. Deputy Denton testified this warrant allowed the social worker to talk with the child privately; it did not.

It is my opinion this was not a voluntary agreement between the social worker and the guardian for placement at all. The social worker "removed" the child from his guardian Ms. Morales. Ms. Morales was only given the opportunity to agree with placing the child with Deputy Denton's family, there was never so much as an attempt to keep the child in his home with his Guardian. It is my opinion this action violated Welfare and Institutions Code 305 and 307.4 and was in contravention of the federal law contained in Wallis v. Spencer and many cases that have followed it.

## 3. Placement:

On July 30, 2017 deputy Denton testified Ms. Dale drove K.B. to his home. His wife Summer was at the home to greet the social worker and K.B. Officer Denton reported he was not asked to be fingerprinted, Live Scanned, and submitted nothing on his background. Nor was he, or his wife, apparently asked

8

any identifying information for the social worker to conduct a back ground check. It does not appear from any of the records I reviewed that Summer Denton was subjected to a Live-Scan or any kind of background check despite the fact she was an adult living in the home.

Officer Denton testified he was not asked by the social worker to take K.B. to the hospital for an examination. It is my opinion and indisputably best practices that if a social worker suspects physical abuse of such an imminent nature, and likely to lead to serious bodily injury to a child it requires the child be removed from their home on an "emergency" basis it is literally necessary they be taken fairly directly to a medical practitioner or facility, to ensure the child's wellness. In that a social worker is advised not to do a full body check and are not qualified physicians, it is transparently obvious they should be transported for a medical evaluation where they can be examined to check for marks, bruises or broken bones.

The social worker's use of the term "cooling off period" is puzzling, as there is no provision in either state or federal law of which this expert is aware, that authorizes separating children from their parent(s) for a "cooling off period." The term "cooling off period" is generally used when speaking of a couple of hours or days, but there is no provision for such "cooling off period" in Division 31 regulations at all.

Deputy Denton testified he assumed he would only have K.B. a couple of days over the weekend. He called Child Welfare the following Tuesday after the weekend. He testified to getting the runaround. He advised CFS his family was not able keep K.B. any longer and CFS needed to stick to their agreement.

## 4. Medical Notification & Consent:

Deputy Denton brought K.B. to the CFS office. K.B. was then placed in a shelter. K.B. testified he had two medical appointments while in care. The first medical appointment he testifies he thinks was a basic physical and the second medical

9

appointment he received a Tuberculosis skin test. The policy for placement agencies, foster parents or relatives who have been approved for placement of the child are required to take the child for a full physical within thirty days of placement. This expert does not have information on the extent of the "physical" K.B. had while in the County's care. If it was not thorough it may not have qualified as the full physical foster parents are required to take children in their placement to have.

Ms. Morales testified she was not notified of any medical appointments or procedures. Typically the department has a court order when a child is in foster care for the department to have medical consent rights, but as noted previously, no court case was ever opened. Instead, it appears Ms. Morales, and at least Ms. Morales has testified, she was coerced to sign a voluntary placement which gives the department authority to make medical decisions on behalf of the child. Notably, nothing in the document states or implies that Ms. Morales lost all medical rights pertaining to K.B., and nothing in the document appears to claim she was waiving her rights of notice as to any appointments with health care providers (including her right to attend such appointements), any prescription or administration of medications to K.B., or anything else involving non-emergency medical care for K.B.

Even parents whose children are taken and a dependency case is filed retain medical rights unless a Court order take them away or limits them. Here, it appears the medical rights of Mrs. Morales over K.B. were ignored, at the very least with regard to the providing of notice to her of upcoming appointments. This is problematic in that parents or primary caregivers are typically the person most knowledgeable about the circumstances of a child with regard to allergies, current medications, medical needs, and general medical history. It is the opinion of this expert that the rights of notice and the ability to attend any such medical appointments of a child, whether a formal dependent of the Court or on a Voluntary placement – as claimed by Ms. Dale – is protected under federal decisional law, and without a doubt required under standards of best practices in the area of child

welfare.

5. **Return Child Home:**

Ms. Morales testified on August 4, 2015 she went to the county office and met with social worker Dale. Ms. Morales testified Ms. Dale said that if she didn't sign the paperwork for a voluntary plan whereby K.B. stayed in the County's care, the child would be taken away and she would not be able to see him again. Ms. Morales testified she requested K.B. to be returned to her numerous times, saying, "I called them all the time and demanded him back." I am informed that Ms. Wilson-Tancreto, who was K.B.'s court appointed attorney in the guardianship proceedings both when he was younger and when his mother sought to dissolve it based on the removal of K.B. from Mrs. Morales, was told by Mrs. Morales upon her very first communication with Mrs. Morales (after Ms. Wilson-Tancreto was "reappointed" post removal), that Mrs. Morales been calling and/or telling County of Mendocino social workers virtually every time she had contact with any of them, and definitely at every visit with K.B, that she wanted K.B. back. Ms. Morales told Ms. Wilson-Tancreto that the social workers just ignored her and/or told her she was not getting K.B. back.

Mrs. Morales testified she spoke with Ms. Dale at length several times about returning K.B. to her immediately, but as previously noted, Ms. Dale did not input any of her investigation into the Child Welfare database (CMS/CWS) to verify in the County's records a single request. There are no delivered service logs with information regarding the investigation or interviews with Mr. & Mrs. Morales on August 4th at all. Ms. Dale testified she advised her supervisor Lisa Allison about the notes of an interview with Mr. & Mrs. Morales occurring on August 4th, 2015, contained in a word document prior to leaving employment with the County of Mendocino. I understand from Counsel for Plaintiffs that no Delivered Service Logs or notes of any kind about Ms. Dale's alleged discussions with the Guardian and her husband (who only speaks English to experts informed understanding) were ever produced in the litigation of this matter.

11

Ms. Morales testified she told the people in the family team meeting she wanted K.B. returned. She testified she told Lisa Allison on two occasions she wanted K.B. returned. Mrs. Morales testified, "I thought that they understood the English language[,] I specifically told every one of those people that I dealt with from day one, "I want him back right now[,]" [a]nd they kept telling me, "No, you can't have him back[,]" [t]hat's what I was told." Ms. Morales testified it wasn't until after K.B.'s attorney from Probate Court (Ms. Wilson-Tancreto) contacted county counsel did Ms. Morales get K.B. back in her care.

It is my opinion and training that the family receiving services under a voluntary family plan has the right to withdraw services at any time, and in fact the form Mrs. Morales signed said that in it. This revocation can be done verbally or in writing, there is no requirement it be in writing. It is also my opinion that if indeed this case was a Voluntary Case, under division 31-215 the department is required to provide the family a case plan within 30 days of the in person investigation. The child was in care for 59 days with no reasonable family reunification services for K.B. to return home.

## Documents / Information Reviewed:

1.     Deposition Transcript of Jannee Dale
2.     Deposition Transcript of Christian Denton
3.     Deposition Transcript of Linda Morales
4.     Deposition Transcript of K.B
5.     Deposition Transcript of Thelma Giwoff and Jena Conner
6.     Voluntary Placement Agreement
7.     Delivered Service Log's
8.     Audio of Morales and Dale Conversation on July 30, 2015
9.     California State Child Welfare Division 31
10.    Welfare and Institutions Code 300
11.    Penal Code 11165.3-.7
12.    Statement of Jennifer Wilson-Tancreto as related by Plaintiff's
       Counsel Robert Powell
13.    The 9th Circuit opinion in Wallis v Spencer

14.      Gonzales v Santa Clara County
14.      Delivered Service Logs
15.      Numerous other publication, policies, procedures, practices and customs (including those from the Counties of Contra Costa, El Dorado, and Yolo where this expert previously was employed).

**<u>Witness's qualifications, including a list of all publications authored in the previous 10 years</u>:**

See attached Curriculum Vitae.

**<u>List of other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition</u>:**

See attached Curriculum Vitae.

**<u>State of the compensation to be paid for the study and testimony in the case</u>:**

Ms. Nelson charges $175 per hour for research and preparation and $500.00 per hour for deposition and trial testimony.

Dated: _October 5, 2017_              _Rebecca Nelson_
                                       Rebecca Nelson. MSW

13

*EXHIBIT B*

1  Nancy K. Delaney, State Bar #70617
   William F. Mitchell, State Bar #159831
2  MITCHELL, BRISSO, DELANEY & VRIEZE
   814 Seventh Street
3  P.O. Drawer 1008
   Eureka, CA 95502
4  Telephone: (707) 443-5643
   Facsimile: (707) 444-9586
5  Email: ndelaney@mitchelllawfirm.com

6  Attorney for Defendants
   *JANNEE DALE, LISA ALLISON,*
7  *BUFFEY WRIGHT and MIMI CABRAL*

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 LINDA MORALES, individually, and as     ) Case No.: 16-CV-02429-EMC
   Guardian Ad Litem for KB, and           )
11 RUDOLFO MORALES,                        ) DEFENDANTS' WITNESS LIST
                                           )
12              Plaintiffs,                 ) Pre-Trial Conference:
                                           ) DATE:  March 6, 2018
13          vs.                             ) TIME:  2:30 p.m.
                                           ) CTRM:  5, 17th Floor, San Francisco
14 COUNTY OF MENDOCINO, JANNEE             ) Honorable Edward M. Chen
   DALE, LISA ALLISON, ROBIN               )
15 BUXTON, BUFFEY WRIGHT,                  )
   JENNIFER SOOKNE, MIMI CABRAL,           ) Trial:
16 SUSAN ROGERS, VW [minor], and           ) DATE:  April 2, 2018
   DOES 1-10, inclusive,                   ) TIME:  8:30 a.m.
17                                          )
                Defendants.                 )
18                                          )
   _____)
19

20

21

22

23

24

25

26

                              0

| Name of Witness | Description of Testimony | Time Estimate |
|---|---|---|
| Jannee Dale | 2014 and 2015 interactions with Linda Morales and KB, Risk Reduction Plan, Voluntary Placement Agreement, concerns, plans for KB, lack of communications requesting return of KB | Direct: 2.0 Hours Cross: 1.5 Hours |
| Jennifer Sookne | Report of abuse by VW and KB, designation as sensitive, interactions with defendant Wright, recovery and parenting of defendant Wright | Direct: 1 Hour Cross: .75 Hour |
| Mimi Cabral | Interactions with Linda Morales and KB, Voluntary Placement Agreement, concerns, plans for KB, lack of communications requesting return of KB until September 25, 2015 | Direct: 2.0 Hours Cross: 1.5 Hours |
| Susan Rogers | Interactions with plaintiffs, directions to social workers, appropriateness of actions taken. 2014 and 2015 CPS interactions with Linda Morales and KB, Risk Reduction Plan, Voluntary Placement Agreement, concerns, plans for KB, lack of communications requesting return of KB until September 25, 2015 | Direct: 1.0 Hour Cross: .75 Hour |
| Lisa Allison | Interactions with plaintiffs, directions to social workers, appropriateness of actions taken. 2014 and 2015 CPS interactions with Linda Morales and KB, Risk Reduction Plan, Voluntary Placement Agreement, concerns, plans for KB, lack of communications requesting return of KB until September 25, 2015 | Direct: 1.0 Hour Cross: .75 Hour |
| Shirley Fulks | Documented telephone contact with Linda Morales wherein Linda Morales acknowledged that she knew she could terminate the Voluntary Placement at any time and communicated same to defendants (see Exhibit 108, p. 000022, Exhibit 109, p. 000025, and Exhibit 110, p. 000021) | Direct: .5 Hour Cross: .5 Hour |
| VW | Observations of abuse of KB and others by Linda Morales and report of same | Direct: 1.0 Hour Cross: 1.0 Hour |
| Carlos Jacinto | Interactions with Linda Morales and social workers regarding planning for KB, concerns of Linda Morales regarding same, absence of request for and inconsistent with immediate return of KB to Morales residence | Direct: 1.0 Hour Cross: .75 Hour |

MITCHELL, BRISSO,
DELANEY & VRIEZE, LLP
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

1

| | | |
|---|---|---|
| Buffey Wright | Any matter related to family dynamics, including abuse experienced as a child, relationship with Linda Morales, KB | Direct: 2.0 Hours Cross: 1.5 Hours |
| Lisa Johnson | Observations, interactions of visit between KB and Linda Morales and others , communications with same | Direct: .75 Hour Cross: .5 Hour |
| C. Pageau | Observations, interactions of visit between KB and Linda Morales, defendant Wright and others , communications with same | Direct: 1.0 Hour Cross: .75 Hour |

DATED:   February 13, 2018        MITCHELL, BRISSO, DELANEY & VRIEZE

By:  /s/ Nancy K. Delaney
      Nancy K. Delaney
      William Mitchell
      Attorneys for County Defendants

MITCHELL, BRISSO,
DELANEY & VRIEZE, LLP
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502

DEFENDANTS' WITNESS LIST

*EXHIBIT C*

| Linda Morales, et al. v. County of Mendocino, et al. | | | | | |
|---|---|---|---|---|---|
| 3:16-CV-02429-EMC | | | | | |
| Joint Exhibit List | | | | | |
| Exh. No. | Description | For What Purpose; Identify Sponsoring Witness | Objections | Objection Responses | Court Use |
| 1 | Delivered Service Logs 09/11/2014 to 09/30/204 | Show written record of Dale investigation 2014 and subsequent events / SWit: Plaintiffs | | | |
| 2 | Delivered Service Logs 06/01/2015 to 01/28/2016 | Show written record of Dale investigation 2014 and subsequent events / SWit: Plaintiffs | | | |
| 3 | ER Research Checklist / On-Line Intake Screening Form / Screener Narrative | Show original referral documents re: 2015/ SWit: Plaintiffs | | | |
| 4 | Warrant Application and Warrant | Show referral basis of 2014 "spanking," and credibility issues Dale re: 2015 / SWit: Plaintiffs | | | |
| 5 | Suspected Child Abuse Report / Mendocino County Sheriff Office Case Report | Show contemporaneous records of events re: 2015 / SWit: Plaintiffs | Hearsay, relevance | Exception to rules of Hearsay. Dispute relevance objection. | |
| 6 | Audio Disc and Transcript of Linda Morales and Jannee Dale Conversation on 07/30/2015 | Show contemporaneous records of events re: 2015 / SWit: Plaintiffs | Should be marked For Identification Only, relevance | "Marked" objection, no response. Dispute relevance objection. | |

| 7 | Family Safety Plan | Show document claimed to support placement K.B. with Dentons by consent / SWit: Plaintiffs | Hearsay, relevance | Exception to rules of Hearsay | |
| 8 | Safety Assessment | Show contemporaneous assessments by Dale/Allison re: 2015 / SWit: Plaintiffs | | | |
| 9 | Voluntary Placement Agreement | Show contemporaneous agreement document Defendants Dale/Allison contend consented to re: 2015 continued detention/ SWit: Plaintiffs | | | |
| 10 | Facebook Posts | Show contemporaneous communications and relationships between Buffey Wright, V.W. and others, including Jennifer Sookne / SWit: Plaintiffs | Relevance, see Motion in Limine No. 1. | Exception to rules of Hearsay | |
| 11 | Declaration of Jennifer Wilson-Tancreto | Show contemporaneous recorded events and statements reflecting state of mind of Plaintiffs and observations of percipient witness to discussions with K.B. re: allegations. / SWit: Plaintiffs | Hearsay, see Motion in Limine No. 3 | Exception to rules of Hearsay | |
| | | Plaintiffs reserve the right to offer or reference any Exhibits listed by | | | |

|  |  | Defendants should Defendants withdraw same. |  |  |  |
|---|---|---|---|---|---|

|  | **Defendants:** | Defendants reserve the right to offer or reference any Exhibits listed above should plaintiffs withdraw same. |  |  |  |
|---|---|---|---|---|---|
| 101 | Risk Reduction Plan dated September 11, 2014 | Jannee Dale, documenting prior contact | Hearsay | Party admission |  |
| 102 | Screener Narrative | Jennifer Sookne, documenting report by VW, KB | Hearsay | Party admission |  |
| 103 | Excerpts of KB's Journal | Jannee Dale, Documenting information provided by KB | Hearsay | Party admission |  |
| 104 | Voluntary Placement Agreement – Placement Request | Jannee Dale, Mimi Cabral, documenting basis for voluntary placement | Hearsay | Party admission |  |
| 105 | Family Safety Plan dated September 28, 2015 | Susan Rogers, Mimi Cabral, documenting response when voluntary placement terminated | Hearsay | Party admission |  |
| 106 | Notes/Minutes of Family Team Meeting dated August 19, 2015 | Carlos Jacinto, documenting discussions, plan from Family Team Meeting | Hearsay | Party admission |  |
| 107 | In Chambers Interview of KB dated April 25, | * | Hearsay |  |  |

| | | | | | |
|---|---|---|---|---|---|
| | 2013 | | | | |
| 108 | Jannee Dale's Emails | * | Hearsay | | |
| 109 | Lisa Allison's Emails | * | Hearsay | | |
| 110 | Mimi Cabral's Emails | * | Hearsay | | |

*For Identification Only