UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA MORALES, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>COUNTY OF MENDOCINO, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-02429-EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

## I.　　TRIAL DATE & LENGTH OF TRIAL

Jury selection shall be held on April 2, 2018, at 8:00 a.m.

The jury trial shall begin immediately thereafter, with opening statements and then the presentation of evidence. Each side shall have 30 minutes to present opening statements; 11 hours to present evidence, including direct and cross examination and presentation of all exhibits; and 45 minutes for closing arguments. Time limits will be strictly enforced.

Trial time shall run:

- On April 2 and 3, from 8:30 a.m. to 5:00 p.m.
- On April 4, from 8:30 a.m. to 2:00 p.m.
- On April 9, from 8:30 a.m. to 5:00 p.m.
- On April 10, from 8:30 a.m. to 2:00 p.m.
- If needed, on April 11, from 8:30 a.m. to 2:00 p.m.

The Court intends to submit the case to the jury by the end of the day April 9.

## II.　　WITNESSES

A.　　Plaintiffs' Witnesses

Plaintiffs have identified the following individuals as witnesses they may call in their case-

in-chief.

1. Linda Morales (a plaintiff)
2. Rudolfo Morales (a plaintiff)
3. K.B. (a plaintiff and a minor)
4. V.W. (a dismissed defendant and a minor).
5. Jannee Dale (a defendant appearing by deposition)
6. Lisa Allison (a defendant appearing by deposition)
7. Buffey Wright (a defendant)
8. Jennifer Sookne (a dismissed defendant)
9. Mimi Cabral (a defendant)
10. Christian Denton
11. Summer Denton
12. Eric Wright
13. Jennifer Wilson-Tancreto
14. Christine Hester
15. Mary Koller
16. Mindy Juszczak
17. Heather Barsh
18. Rebecca Nelson (an expert)

B. Defendants' Witnesses

Defendants have identified the following individuals as witnesses they may call in their case-in-chief.

1. Jannee Dale (a defendant)
2. Jennifer Sookne (a dismissed defendant)
3. Mimi Cabral (a defendant)
4. Susan Rogers (a dismissed defendant)
5. Lisa Allison (a defendant)
6. Shirley Fulks

7. V.W. (a dismissed defendant and a minor)
8. Carlos Jacinto
9. Buffey Wright (a defendant)
10. Lisa Johnson
11. C. Pageau

### III. REMAINING LEGAL ISSUES

The claims remaining after the motion for summary judgment are:

- Claim 1: A § 1983 claim under the Fourteenth Amendment for K.B.'s continued removal under the Voluntary Placement Agreement. The claim is brought by Ms. Morales and K.B. against Ms. Dale.

- Claim 2: A § 1983 claim under the Fourth Amendment for K.B.'s continued removal under the Voluntary Placement Agreement. The claim is brought by K.B. against Ms. Dale.

- Claim 3: A § 1983 claim under the Fourteenth Amendment for Ms. Dale, Ms. Allison, and Ms. Cabral's failure to return K.B. to Ms. Morales upon her requested termination of the Voluntary Placement Agreement. The claim is brought by Ms. Morales and K.B. against Ms. Dale, Ms. Allison, and Ms. Cabral.

- Claim 4: A § 1983 claim under the First Amendment for Ms. Dale's actions in preventing Plaintiffs from speaking to each other during the course of K.B.'s removal on July 30, 2015. The claim is brought by Ms. Morales, Mr. Morales, and K.B. against Ms. Dale.

- Claim 5: A § 1983 claim under the Fourteenth Amendment for Ms. Dale's actions in preventing Ms. Morales from being present while Ms. Dale interviewed K.B. on July 30, 2015. The claim is brought by Ms. Morales and K.B. against Ms. Dale.

- Claim 8: A state-law claim for conspiracy to intentionally inflict emotional distress upon Ms. Morales and K.B. by removing K.B. from the care, custody, and control of Ms. Morales. The claim is brought by Ms. Morales and K.B. against Ms. Wright.

3

1  A.  Claim 4: Basis for the Claim

2  Claim 4 is a § 1983 claim for Ms. Dale's violation of the First Amendment when Ms. Dale refused to permit K.B., Ms. Morales, and Mr. Morales to speak with each other in the course of K.B.'s removal from Ms. Morales' home. Claim 4 alleges violations of Plaintiffs' rights to privacy, association, and free speech. Defendants argued in their trial brief that Claim 4 has the same standard as Claim 1, the primary familial-association claim under the Fourteenth Amendment. *See* Docket No. 115 at 3-4.

The Court ordered supplemental briefing on the basis for the claimed right for Plaintiffs to speak with each other in these particular circumstances. *See* Docket No. 127. Plaintiffs failed to identify any such basis for holding this brief restriction during the removal violated the First Amendment, only arguing that the First Amendment protects free speech generally. *See* Docket No. 129. Even if there was an infringement on a First Amendment interest, Plaintiffs do not address the strength of Defendants' justification for restricting contact during the removal process. Plaintiffs cite no cases on point. Given Plaintiffs' failure to show that the First Amendment protects a brief conversation between K.B., Mr. Morales, and Ms. Morales in the context of the removal as alleged in Claim 4, the claim fails. At minimum, Plaintiffs' right to speak with each other under these circumstances is not clearly established by U.S. Supreme Court precedent, and qualified immunity therefore applies. *See Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017). Accordingly, the Court **DISMISSES** Claim 4.

B.  Claim 5: Basis for the Claim

Claim 5 asserts a § 1983 claim against Ms. Dale for unlawful interrogation under the Fourteenth Amendment. The essence of the claim is that when Ms. Dale interviewed K.B. on July 30, 2015, she insisted on speaking with K.B. alone. *See* Compl. ¶ 180. According to Plaintiffs, this amounted to a violation of Ms. Morales' and K.B.'s right to familial association.

The Court issued an order for supplemental briefing requesting that the parties identify the legal basis for Ms. Morales' claimed right to be present during K.B.'s interview. *See* Docket No. 127. Plaintiffs' responsive brief essentially argues that it was not necessary to exclude Ms. and Mr. Morales during the interview but identified no applicable law establishing a constitutional

4

claim in these circumstances. *See* Docket No. 129 at ECF 2-3. They liken the interview with investigatory medical care, for which parents and guardians have the right to be present under *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000). However, *Wallis* is distinguishable. The guardian's right to be present during investigatory medical attention given to the minor is based on the trauma that can result from such procedures and the minor's need for the guardian's comfort. *See Wallis*, 202 F.3d at 1142. That reasoning is not applicable to a social worker's interview of the minor regarding abuse *by the guardian in question*.

Plaintiffs cite no other authority addressing the particular context at issue here. They cite no case establishing that Ms. Morales had the right to be present during K.B.'s interview regarding her alleged abuse of him. Even if Ms. Morales had a right to be present, so as to trigger scrutiny under the Fourteenth Amendment, the state has an obvious compelling interest in excluding the purported abuser from the interview. At the very least, any such right to be present during the interview is not clearly established by U.S. Supreme Court precedent, and qualified immunity therefore applies. *See Fry*, 873 F.3d at 821 (9th Cir. 2017).[1] Claim 5 is therefore **DISMISSED**.

C. <u>Claim 1: Procedural Due Process or Substantive Due Process</u>

Defendants argue that there is no claim for procedural due process in the Complaint. That is not so. Claims for interference with a guardian-minor relationship may be brought as either a procedural due process claim or a substantive due process claim. *See Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987); *accord* Ninth Circuit Model Civil Jury Instruction No. 9.32, Comment. A procedural due process claim lies where the "best interests of the child arguably warrant[] termination of the parent's custodial right" and concerns removal without a court order or reasonable cause to believe the minor is in imminent danger of serious bodily injury. *City of Fontana*, 818 F.2d 1419; *see Rogers v. Cty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007). The substantive due process claim lies where the interference in the relationship was "for the purposes of oppression" and "shocks the conscience." *City of Fontana*, 818 F.2d at 1419; *Gantt v.*

---

[1] The Court also notes that a fair interpretation of the see-and-speak warrant's authorization of Ms. Dale to speak with K.B. permitted her to speak with him alone; even though such permission is not explicit in the warrant, it is a fairly implied. This further supports qualified immunity.

5

1  *City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).

The Complaint includes both types of claims. As to the procedural due process claim, the Complaint alleges that "Defendant DALE's conduct in removing K.B. in the absence of any imminent risk of serious bodily injury, without consent of the child's lawful Guardian, or having procured a warrant, constituted a violation of the 14th Amendment . . . ." Compl. ¶ 154. As to the substantive due process claim, the Complaint alleges that "[the] acts and omissions of Defendants . . . are malicious, oppressive, born of deliberate indifference, [and] shocking to the conscience of the reasonable person . . . ." Compl. ¶ 152. The Court cannot dismiss these claims as insufficient as a matter of law without hearing the evidence.

D. <u>Claims 1 and 2 (Removal Claims): Burden of Proof Regarding Voluntariness</u>

Plaintiffs bear the burden of establishing that her consent to the Voluntary Placement Agreement was involuntary. "In a criminal case, the government bears the burden of proving by a preponderance of the evidence that consent was freely and voluntarily given. In a civil case under 42 U.S.C. § 1983, however, the plaintiff carries the ultimate burden of establishing each element of his or her claim, including lack of consent." *Pavao v. Pagay*, 307 F.3d 915, 918-19 (9th Cir. 2002) (citing *Larez v. Holcomb*, 16 F.3d 1513, 1517 (9th Cir. 1994)).

E. <u>Claims 1 and 2 (Removal Claims): Remaining Issues (Adequacy of Investigation Irrelevant)</u>

Ms. Morales' consent to the Voluntary Placement Agreement is the only issue remaining for Claims 1 and 2. Defendants conceded at the Final Pretrial Conference that they did not have reasonable cause, exigent circumstances, or any other basis to remove K.B. without Ms. Morales' consent. *See* Docket No. 142 at 12-13, 14. Arguments on Claims 1 and 2 shall therefore be limited to Ms. Morales' consent. Because of this, the adequacy of Defendants' investigation is not at issue, and evidence of such shall not be admitted for purposes of establishing liability under Claims 1 and 2, particularly given the significant risk of confusing the jury by introducing such collateral non-probative evidence. *See* Fed. R. Evid. 403.

Plaintiffs argue that Ms. Morales' consent is tied to whether Defendants had reasonable

cause to keep K.B. removed from Ms. Morales' home. *See* Docket No. 116 at 7-8 (citing *Sangraal v. City & Cty. of Francisco*, No. C 11-04884 LB, 2013 WL 3187384, at *7-15 (N.D. Cal. 2013)). However, consent and reasonable cause are independent grounds for a social worker to remove a child from his home. If there is no valid consent, a claim of constitutional violation may turn on whether there was sufficient cause to justify the government's action. If there is valid consent, whether the government had sufficient cause is irrelevant because valid consent would obviate the constitutional claim. While reasonable cause may be conditionally relevant to Plaintiffs' claim (depending on whether there is valid consent), it does not inform the threshold question whether there is valid consent—the only issue for trial as to Claims 1 and 2 that is left after the Defendants' concession that it had no legal basis to detain K.B. absent consent. That question of consent turns on the "totality of all the circumstances," *United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2004) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)), which informs the Plaintiffs' state of mind and vulnerability. Relevant facts include whether the government employed coercive measures such as where the government official claims lawful authority to do the action that was purportedly consented to. *See Bumper v. North Carolina*, 391 U.S. 543, 549 (1968). A claim to lawful authority "announces in effect that the [consenting individual] has no right to resist" the action. *Id.* Such a situation is "instinct with coercion." *Id.* However, whether the official *actually* has lawful authority is irrelevant to the consent analysis; coercion turns on what is said to the plaintiff and what the plaintiff perceives.

To be sure, Plaintiffs argued at the Final Pretrial Conference that the adequacy of Defendants' investigation goes to punitive damages. But given Defendants' concession that the government had no right to keep K.B. away from Ms. Morales absent consent, there is no need to get into the specifics as to the adequacy of the investigation. Defendants admit they had no basis to maintain custody over K.B. and did so *solely* because of Ms. Morales' consent. If the jury finds that consent was coerced and thus invalid, Plaintiffs will prevail on the merits and the jury can then assess Defendants' conduct *in regard to the obtaining and coercing of that consent* to determine whether there is sufficiently egregious conduct to warrant punitive damages.

7

F.  Unlawful-Seizure Component of Claim 2: Standard

The parties disagree as to the proper standard for K.B.'s unlawful seizure. Plaintiffs offer a jury instruction for a typical Fourth Amendment § 1983 claim. *See* Docket No. 120 at 43. However, the proper standard for the unlawful-seizure claim tracks that of Claim 1 under the Fourteenth Amendment. *Rogers*, 487 F.3d at 1294 ("The Fourth Amendment . . . protects children from removal from their homes absent" a showing that there was "reasonable cause to believe that the child is in imminent danger of serious bodily injury and . . . the scope of the intrusion is reasonably necessary to avert that specific injury."); *see Doe v. Lebbos*, 348 F.3d 820, 826 n.9 (9th Cir. 2003) (noting that Ninth Circuit precedent "applie[s] the same legal standard in evaluating Fourth and Fourteenth Amendment claims" for the removal of children from their guardians or parents).

G.  Claim 8: Dismissal of Conspirators

Claim 8 alleges a conspiracy amongst Ms. Wright, Ms. Buxton, Ms. Sookne, and V.W. to intentionally inflict emotional distress upon Ms. Morales and K.B. The Court previously dismissed V.W., *see* Docket No. 74, and Plaintiffs voluntarily dismissed Ms. Buxton and Ms. Sookne; only Ms. Wright remains. *See* Docket No. 78. However, that does not defeat the claim as Defendants argued at the Final Pretrial Conference. "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 504, 510-11 (1994). Though Plaintiffs dismissed Ms. Wright's alleged co-conspirators from Claim 8, they can still prosecute Claim 8 as a conspiracy. Plaintiffs can prevail on Claim 8: (1) by proving that Ms. Buxton or Ms. Sookne intentionally inflicted emotional distress upon Ms. Morales or K.B., and that Ms. Wright was engaged in a conspiracy with the immediate tortfeasor, or (2) by proving that Ms. Wright herself intentionally inflicted emotional distress upon Ms. Morales or K.B.

## IV.  **EXHIBITS**

The parties disagree about the admissibility of 15 of 21 exhibits. Below are the Court's rulings on the exhibits that are in dispute. Defendants object to Exhibits 5, 6, 10, and 11.

1    Plaintiffs object to Exhibits 101 through 110.

2    A.    Exhibit 5

3    This exhibit consists of two documents: the initial CPS suspected child abuse report documenting V.W.'s call to CPS, and Christian Denton's case report on his assistance of Ms. Dale during the July 30, 2015, encounter at the Morales residence. The case report also documents his return of K.B. to CPS on August 4. Defendants object on hearsay and relevance grounds.

The suspected child abuse report contains multiple hearsay (the document itself, which contains V.W.'s allegations, which include Ms. Morales' statements). The first level of hearsay is defeated by the exceptions for public records and records of a regularly conducted activity. *See* Fed. R. Evid. 803(6), (8). There is however a second level of hearsay. However, to the extent admission of the document is for statements made by the party opposing admission (Plaintiffs), it is admissible as a statement of that party's admission. Otherwise, it may be admitted to show state of mind where that state of mind is relevant (see chart below). On request, the Court will give a limiting instruction in this regard.

The case report is double hearsay (the document itself, which both includes statements by Ms. Dale and Ms. Morales and includes description of a "11166 PC Cross report" stating that Ms. Morales abuses K.B.). The first level of hearsay is defeated by the exceptions for public records and records of a regularly conducted activity. *See* Fed. R. Evid. 803(6), (8). The case report is therefore admissible as to the fact that Deputy Denton observed the events described. The objection is overruled to this extent. Defendants may renew their hearsay objection if Plaintiffs seek to introduce the case report for other reasons unless Plaintiffs demonstrate an exception or non-hearsay reasons, such as the statements of a party opponent or to prove a relevant aspect of the state of mind of the receiving party. Below is an analysis of the states of mind that are relevant to the claims remaining in this case.

///
///
///
///

9

| **RELEVANT STATES OF MIND** | |
|---|---|
| V.W. | Relevant to IIED (whether she was telling the truth or was manipulated by Ms. Wright) |
| K.B. | Same as V.W. |
| Wright<br>Burton<br>Sookne | Same as above (IIED) and whether they conspired to commit IIED |
| Dale<br>Cabral<br>Allison | Dale's state of mind is relevant only as it relates to coercion of consent to the VPA, and only to establish punitive damages<br><br>Dale, Cabral, and Allison's, states of mind are relevant insofar as it relates to their alleged denial of Morales' request to terminate VPA and return K.B. |
| Morales | Morales' state of mind is relevant to her consent to the VPA and her request to terminate VPA |

B. Exhibit 6

This exhibit is an audio recording and transcript of the July 30, 2015, encounter in the Morales residence. Defendants object that the exhibit should be marked For Identification Only and on relevance grounds. Plaintiffs indicate that they do not oppose marking the exhibit For Identification Only, and the exhibit may be so marked. The relevance objection is overruled as moot.

C. Exhibit 10

This exhibit consists of various Facebook comments posted by Robin Buxton and Jennifer Sookne. Defendants explain their objection in their Motion in Limine No. 1. Per the Court's resolution of that motion below, Defendants' objections are overruled.

D. Exhibit 11

This exhibit is the declaration of Ms. Wilson-Tancreto. Defendants explain their objection in their Motion in Limine No. 3. The Court sustains the objection in part and overrules in part, as explained in its resolution of the motion in limine below.

E. Exhibit 101

This exhibit is the Risk Reduction Plan signed by Ms. Morales during the previous investigation in 2014 regarding Ms. Morales' physical discipline of K.B. In it, Ms. Morales agrees in her own handwriting to use a "hands off approach to discipline." Plaintiffs object on hearsay grounds. Defendants defend the exhibit as a party admission. To the extent there is a statement or adoption of statement by Ms. Morales, it may be admitted as a party opponent admission. Otherwise, statements are not admissible unless Defendants can demonstrate, *e.g.*, admission to show relevant state of mind.

F. Exhibit 102

This exhibit is a Screener Narrative documenting the allegations made by V.W. in her CPS call. Plaintiffs object on hearsay grounds. Defendants defend the exhibit as a party admission.

The exhibit is double hearsay. The first level of hearsay may be overcome as a public record or record of a regularly conducted activity if a proper foundation is laid. As to the second level of hearsay, the objection is overruled insofar as the exhibit may be offered for the fact that V.W. made the allegations and to show V.W.'s state of mind and potentially those of others where relevant (see above). It is otherwise sustained. In particular, the part of the exhibit listing the number of past referrals regarding K.B. is highly prejudicial and that prejudice substantially outweighs any probative value under Federal Rule of Evidence 403. Notably, that evidence would not be admissible under Fed. R. Evid. 404(b). Defendants shall **REDACT** that portion of the exhibit and resubmit the exhibit by March 26, 2018. The parties are encouraged to stipulate to such redactions.

G. Exhibit 103

This exhibit consists of excerpts of K.B.'s journal describing various abuse by Ms. Morales, including statements she purportedly made. Plaintiffs object on hearsay grounds. Defendants defend the exhibit as party admissions. The objection is overruled.

H. Exhibit 104

This exhibit consists of the Voluntary Placement Agreement signed on August 4, 2015, by Ms. Morales. Plaintiffs object on hearsay grounds. Defendants defend the exhibit as party

admissions. The objection is overruled. The factual statements are party admissions. Moreover, the document is a legally operative fact. Its validity is at the center of this dispute. *See United States v. Pang*, 362 F.3d 1182, 1192 (9th Cir. 2004).

I. Exhibit 105

This exhibit consists of a Family Safety Plan signed on September 28, 2015, by Ms. and Mr. Morales upon termination of the Voluntary Placement Agreement. Plaintiffs object on hearsay grounds. Defendants defend the exhibit as party admissions. To the extent the document contains statements or adoption of statements by Ms. Morales, the objection is overruled. Unless Defendants can demonstrate otherwise, this Plan is not an operative fact like the VPA since its validity does not appear to be an issue. *Cf. Pang*, 362 F.3d at 1192.

J. Exhibit 106

This exhibit consists of Carlos Jacinto's notes documenting the proceedings of a Family Team Meeting in which Ms. Allison, Ms. Dale, Ms. Morales, Eric Wright, and Mr. Jacinto participated. Plaintiffs object on hearsay grounds. Defendants defend the exhibit as party admissions.

The notes are double hearsay. Even if the first level of hearsay may be overcome by the present sense impression exception or as a public record, the second level of hearsay is not overcome as party admission, unless it is established that the source of the statement is one of the Plaintiffs; the exhibit does not indicate the source. The notes only contain unattributed statements such as "[K.B.] is being influenced by mom in visits" and "[K.B.] got more contact with mom during uncles [sic] death." Absent proper foundation for an exception, the objection is therefore sustained. To the extent admission is sought to show Defendants' state of mind at the time of K.B.'s removal or continued removal, and a proper foundation and relevance of state of mind is established (per above table), the Court will reconsider.

K. Exhibit 107

This exhibit is an on-the-record chambers interview of K.B. by Superior Court Judge Henderson. The exhibit is marked For Identification Only by Defendants. Plaintiffs nevertheless object on hearsay grounds. Defendants do not oppose the objection. The objection is therefore

1 sustained.

2 Defendants represented at the Final Pretrial Conference that the exhibit is intended to be used to impeach K.B. if he testifies that he did not want to live with Ms. Wright. Depending on trial testimony, this may be admitted as a prior inconsistent statement. *See* Fed. R. Evid. 801(d).

L. Exhibits 108, 109, 110

These exhibits are various emails received or sent by Ms. Dale, Ms. Allison, and Ms. Cabral. As the Court previously ruled, *see* Docket No. 132, these exhibits will not be accepted into evidence as they are improperly offered.

### V. MOTIONS IN LIMINE

A. Defendants' Motion in Limine No. 1 (Docket No. 112)

Defendants move to exclude evidence and references regarding Facebook posts by Robin Buxton and Jennifer Sookne. *See* Compl. ¶¶ 41-42 (describing the posts). The basis of the motion is that the posts are only useful to prove a conspiracy per Claims 8 (conspiracy to intentionally inflict emotional distress) and 11 (conspiracy to make false report), and that those claims have been dismissed. Though Plaintiffs have voluntarily dismissed Claim 11, *see* Docket No. 78 at 6, Claim 8 remains, as discussed above. The Facebook posts are probative of a conspiracy and the states of mind of the alleged conspirators which is relevant to Ms. Wright's liability. In addition, they are not sufficiently prejudicial to warrant exclusion under Federal Rule of Evidence 403. The motion is therefore **DENIED**.

B. Defendants' Motion in Limine No. 2 (Docket No. 113)

Defendants move to exclude evidence of indemnification of individual defendants by the County. Plaintiffs do not oppose the motion. The motion is **GRANTED**.

C. Defendants' Motion in Limine No. 3 (Docket No. 114)

Defendants move to exclude testimony by Jennifer Wilson-Tancreto regarding her investigation and report regarding Ms. Morales' guardianship of K.B. Ms. Wilson-Tancreto was K.B.'s court-appointed attorney in the 2015 guardianship case. During her investigation, she interviewed Ms. Morales, K.B., Summer Denton, and others.

Defendants argue that witness statements obtained by Ms. Wilson-Tancreto are

inadmissible hearsay. Plaintiffs respond that Ms. Wilson-Tancreto's testimony regarding Ms. Morales' or K.B.'s statements would be used to show their states of mind at relevant times. Specifically, Ms. Morales sought Ms. Wilson-Tancreto's help in seeking K.B.'s return, suggesting that Ms. Morales' agreement to the Voluntary Placement Agreement was involuntary and that she did ask for K.B.'s return. This is a valid basis for admissibility, and the Court disagrees that the probative value of such testimony is substantially outweighed by unfair prejudice. The motion is therefore **DENIED** as to this use of Ms. Wilson-Tancreto's testimony of Ms. Morales' statements.

K.B. told Ms. Wilson-Tancreto that he felt pressured by Ms. Wright to lie at the guardianship hearing in September 2015. This is relevant to K.B.'s state of mind as noted above as this was close in time to the relevant events.

The motion is therefore **DENIED** as to Ms. Wilson-Tancreto's testimony regarding statements made by K.B or Ms, Morales. The motion is **GRANTED** as to Ms. Wilson-Tancreto's testimony regarding statements made by those other than Ms. Morales and K.B.; Plaintiffs did not defend the admissibility of those statements.

Defendants further argue that Ms. Wilson-Tancreto's opinions and conclusions regarding Ms. Morales' relationship with K.B., such as that Ms. Morales is a dedicated and loving grandmother, are speculative and immaterial. The Court agrees with Defendants and further finds such statements to be substantially more prejudicial than probative and therefore legally irrelevant under Federal Rule of Evidence 403. It is also questionable as opinion testimony. The motion is therefore **GRANTED** as to Ms. Wilson-Tancreto's opinions and conclusions.

D. <u>Plaintiffs' Motion in Limine No. 1 (Docket No. 108)</u>

Plaintiffs move to exclude Defendants' expert witnesses based on the failure of Defendants' expert disclosure to comply with Federal Rule of Civil Procedure 26(a)(2). Under Rule 26(a)(2), a party expecting to call an expert witness must disclose either the expert's written report, *see* Rule 26(a)(2)(B), or the subject matter and summary of the expert witness's expected testimony. *See* Rule 26(a)(2)(C). The disclosure offered neither. It lists three experts, including Susan Rogers and Jennifer Sookne, and states, "Defendants reserve the right to testify or elicit testimony regarding the appropriateness of any action or inaction by any social worker, and

14

1  regarding Mendocino County Social Services . . . and to offer opinion testimony regarding same
2  from any defendant or other persons previously identified in any document produced in this
3  matter." Docket No. 108 (Motion in Limine), Powell Decl., Ex. A.

4  As discussed at the Final Pretrial Conference, such testimony is offered by Defendants to show the adequacy of Defendants' actions and investigation. It is intended to rebut Plaintiffs' argument that Defendants conducted an inadequate investigation. As discussed above, evidence that Defendants conducted an inadequate investigation is irrelevant given that the parties have now framed the § 1983 claims solely around whether Ms. Morales' consent to the VPA was voluntary. Accordingly, Defendants' attempt to elicit lay opinions of these instances as rebuttal evidence is moot. For this reason, Plaintiffs' motion is **GRANTED**.

E. Plaintiffs' Motion in Limine No. 2 (Docket No. 109)

Plaintiffs move to exclude any mention, whether in testimony or documents, of V.W. as having been named a defendant in this case. They argue that such mention is irrelevant, as the fact that she was named a defendant in 2016 does not have "any tendency to make a fact more or less probable" regarding events taking place in 2015. Fed. R. Evid. 401(a).

Defendants respond that Plaintiffs' decision to sue V.W. explains why Ms. Wright dismissed her guardianship petition against Ms. Morales. Defendants are concerned that Plaintiffs will argue that Ms. Wright's decision to dismiss her petition was motivated by K.B.'s unwillingness to continue lying about his abuse at Ms. Wright's direction. According to Defendants, Ms. Wright dismissed her petition because she was concerned about a "scorched earth" approach by Ms. Morales that would negatively impact K.B. Furthermore, Defendants argue that Ms. Morales' belief that Ms. Wright conspired with V.W. is "relevant both the credibility of Linda Morales and with respect to her claim of intentional infliction of emotional distress against defendant Wright."

Evidence that Ms. Morales named V.W. as a defendant in this suit is highly prejudicial. In addition, its probative value is not high. The "scorched earth" argument in particular is meritless. The petition was dismissed in September 2015, *see* Docket No. 142 at 53, long before the May 2016 filing of this lawsuit. Ms. Morales' naming V.W. as a defendant is probative as to whether

15

1  Ms. Morales believed V.W. conspired with Ms. Wright; but Ms. Morales' belief does not establish

2  V.W. did in fact so conspire. Any probative value is substantially outweighed by the prejudicial

3  value of this fact. *See* Fed. R. Evid. 403. The motion is **GRANTED**.

F. Plaintiffs' Motion in Limine No. 3 (Docket No. 110)

Plaintiffs move to exclude evidence that Ms. Wright was molested by her father (not Rudolfo Morales) approximately 30 years ago or that Ms. Morales knew of the same. Plaintiffs argue that such evidence is irrelevant and are concerned that Defendants will try to use such evidence to attack Ms. Morales' character in an unfairly prejudicial manner.

Defendants respond that Ms. Wright's sexual abuse as a minor is needed to counteract Plaintiffs' expected attack of her character as a drug user and criminal.

Evidence of Ms. Wright's abuse is highly prejudicial and insufficiently probative of any relevant fact to overcome Federal Rule of Evidence 403. Ms. Wright's abuse at the hands of her father 30 years ago is highly attenuated from the events of this case in 2015 and does not bear heavily on any relevant factual question. Furthermore, such evidence risks the implication that Ms. Morales abused K.B. because she permitted the abuse of Ms. Wright. This is a prohibited use of evidence under Federal Rule of Evidence 404. The motion is **GRANTED**. To be sure, some brief explanation of Ms. Wright's personal struggles may be used to explain how Ms. Morales came to gain custody of K.B., but that evidence and any response thereto will be limited by Rule 403.

G. Plaintiffs' Motion in Limine No. 4 (Docket No. 111)

Plaintiffs move to exclude witness testimony regarding the circumstances or events relating to the 2014 death of Rodney Wright, the brother of Ms. Wright. Plaintiffs argue that Mr. Wright's death and his abuse of drugs and alcohol is irrelevant to the case. They are concerned that Defendants may use the death of Mr. Wright to attack Ms. Morales' character. Plaintiffs further argue that such testimony would cause Ms. Morales unfair prejudice.

Defendants respond that Ms. Wright cared for Mr. Wright during his final days, evidence of which makes less probable that Ms. Wright intentionally inflicted emotional distress on other family members. Defendants also argue that evidence of Mr. Wright's death is needed to explain

16

how V.W. came to live with Ms. Wright.

Mr. Wright's death is relevant and admissible to explain why Ms. Wright took in V.W., and the motion is **DENIED** to that extent. However, the circumstances of Mr. Wright's death and his abuse of drugs and alcohol are otherwise not relevant and, in any event, risks prejudice on a collateral matter that substantially outweighs any probative value. *See* Fed. R. Evid. 403. Accordingly, the motion is **GRANTED** as to testimony regarding the same.

H. Plaintiffs' Motion in Limine No. 5 (Docket No. 130, with objections at Docket Nos. 133, 134)

Plaintiffs move to exclude Shirley Fulks as a witness because she was not disclosed on Defendants' Rule 26 disclosures. Defendants argue that the parties had discussed Ms. Fulks' involvement in the case multiple times. The Court agrees that the parties' discussions and disclosures, some of which occurred nearly a year ago, placed Plaintiffs on notice of her possible relevance as a witness. Ms. Fulks is not a surprise witness; Plaintiffs have not been unfairly prejudiced. The motion is **DENIED**. As discussed at the Final Pretrial Conference, however, Plaintiffs may depose Ms. Fulks for up to two hours prior to trial.

## VI. CLAIMS FOR TRIAL

In light of the above, the following claims remain for trial:

- Claim 1: A § 1983 claim under the Fourteenth Amendment for K.B.'s continued removal under the Voluntary Placement Agreement. The claim is brought by Ms. Morales and K.B. against Ms. Dale. The issue is the voluntariness of Ms. Morales' consent.
- Claim 2: A § 1983 claim under the Fourth Amendment for K.B.'s continued removal under the Voluntary Placement Agreement. The claim is brought by K.B. against Ms. Dale. The issue is the same as under Claim 1.
- Claim 3: A § 1983 claim under the Fourteenth Amendment for Ms. Dale, Ms. Allison, and Ms. Cabral's failure to return K.B. to Ms. Morales upon her requested termination of the Voluntary Placement Agreement. The claim is brought by Ms. Morales and K.B. against Ms. Dale, Ms. Allison, and Ms. Cabral. The issue is

17

whether Ms. Morales conveyed to Defendants her desire to terminate the VPA and regain custody of K.B.

- Claim 8: A state-law claim for conspiracy to intentionally inflict emotional distress upon Ms. Morales and K.B. by removing K.B. from the care, custody, and control of Ms. Morales. The claim is brought by Ms. Morales and K.B. against Ms. Wright. The issue is whether Ms. Wright manipulated V.W. and K.B. to launch false claims against Ms. Morales or whether Ms. Wright took part in a conspiracy to do the same.

## VII. DEMONSTRATIVES

If a party decides to use a demonstrative, that party shall give the opposing party at least one day's notice prior to use of the demonstrative to ensure that any objection may be raised with the Court in advance of use.

## VIII. JURY VOIR DIRE

The Court will conduct voir dire based on the Juror Questionnaire attached to the First Amended Case Management and Pretrial Order. *See* Docket No. 55. In addition, each party shall be given fifteen (15) minutes to voir dire the prospective jurors directly. Eight (8) jurors will be selected.

## IX. PRELIMINARY STATEMENT

The parties submitted conflicting proposed preliminary statements. The Court shall submit a proposed preliminary statement to the parties for their comments. Comments shall be filed within two (2) court days thereafter.

## X. JURY INSTRUCTIONS

The Court shall submit its proposed jury instructions to the parties for their comments. Comments shall be filed within two (2) court days thereafter.

///

///

///

///

## XI. JURY VERDICT FORM

Both parties have proposed using special verdict forms. The Court will submit a proposed verdict form, and the parties shall comment within two (2) days thereafter.

This order disposes of Docket Nos. 108-14, 130. In addition, Docket Nos. 105-07 are denied as moot.

**IT IS SO ORDERED**.

Dated: March 21, 2018

EDWARD M. CHEN
United States District Judge